UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARIA CASTRO CABRERA,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER BULLOCK, *in his official capacity*,<br><br>Respondent. | ) | NO. 3:26-cv-01322<br><br>JUDGE RICHARDSON |

**ORDER**

Pending before the Court is the "Verified Emergency Petition for Writ of Habeas Corpus (28 U.S.C. § 2241) and In-Petition Request for Interim Stay of Transfer and Removal" (Doc. No. 1, "Petition"), filed by Petitioner, Maria Castro Cabrera.

Via the Petition, Petitioner seeks—among other things[1]—the immediate physical release of Petitioner "from custody under reasonable non-monetary conditions of supervision." (Doc. No. 1 at 9). As grounds for her release, Petitioner asserts—among other things—that her detention violates the Due Process Clause of the Fifth Amendment and exceeds the detention authority conferred by the Immigration and Nationality Act because Petitioner is being detained without "an individualized bond hearing before an Immigration Judge where DHS [the Department of Homeland Security] holds the burden of justifying detention by clear and convincing evidence." (Doc. No. 1 at ¶ 36). Petitioner also filed a "Notice of Filing Supplemental Exhibits" (Doc. No. 8) which attached as exhibits, among other things, "official U.S. Postal Service Certified Mail

[1] As for the Petition's other requests for relief, in the Court's view those requests (if not already moot) will be mooted via the instant order and accompanying judgment. Accordingly, the Court does not discuss them herein.

Receipts dated September 16, 2026, establishing immediate proof of proper service[2] of the Verified Petition [Doc. No. 1].” (Doc. No. 8 at 2; Doc. No. 8-2).

On September 18, 2026, Respondent, Christopher Bullock, filed a response to the Petition (Doc. No. 9, “Response”), as directed by the Court’s September 15, 2026 order (Doc. No. 4). In the Response, Respondent provides a single argument as to why the Petition should not be granted: Petitioner “can file a motion for a bond custody hearing but to date has not done so.” (Doc. No. 9 at 1). Later that same day, Petitioner filed a reply (Doc. No. 10, “Reply”) to the Response.

The Court finds that Respondent’s argument is inapt, largely for the reasons stated by Petitioner in both her Petition and her Reply. At the outset, Petitioner stated that “ICE officers seized Petitioner without issuing a Form I-286 Notice of Custody Determination [and] refused to set an administrative bond . . .” (Doc. No. 1 at 1). And in the Reply, Petitioner emphasized that:

> Here, Respondent does not dispute that ICE failed to issue a Form I-286 Notice of Custody Determination or set an administrative bond following Petitioner’s arrest on September 15, 2026. Having failed to issue an initial custody determination in direct violation of 8 C.F.R. § 287.3(d), Respondent constructed an administrative deadlock that foreclosed Petitioner from filing a motion for custody redetermination before an IJ.

(Doc. No. 10 at 3). Petitioner’s argument is well-taken. As the undersigned has previously explained, “under INA regulations, a bond hearing occurs *only* after ICE has made its initial [discretionary] decision to detain—the bond hearing is not itself an initial custody determination but an act of *re*-determination. *Cardona v. Ladwig*, No. 3:25-CV-01451, 2025 WL 3722009, at *7 n.12 (M.D. Tenn. Dec. 23, 2025) (citations omitted) *See also* 8 C.F.R. § 236.1(d)(1) (“After an

[2] The relevant provisions of Fed. R. Civ. P. 4 do not require the summons and the Petition to have been *received* for service to be proper. Instead, the relevant provisions of Fed. R. Civ. P. 4 (i.e., those governing service in this action to the Attorney General, the Secretary of the Department of Homeland Security, and the Nashville U.S. Attorney’s Office) merely require that a copy of the summons and complaint (i.e., the Petition in this case) be *sent* (as they have been) via “registered or certified mail.” *See e.g.,* Fed. R. Civ. P. 4(i)(1)(A)(ii); Fed. R. Civ. P. 4(i)(1)(B); Fed. R. Civ. P. 4(i)(1)(C).

initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released.").

That is to say, a custody *re*-determination hearing can occur only after an initial custody *determination*. And, here, there is no indication in the record that an initial custody determination occurred. Indeed, Petitioner states in the Petition that no initial custody determination occurred, (Doc. No. 1 at 1, ¶¶ 7, 25), and Respondent does not dispute this assertion in the Response. Thus, the Court discerns that *no* initial custody determination took place in this action and in these circumstances the Court does not credit Respondent's argument that Petitioner needs to request a bond hearing before the Court is able to order Petitioner's release.

Notably, in his Response, Respondent concedes that the Sixth Circuit's ruling in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) controls, meaning that "Petitioner is [properly deemed] detained under § 1226(a)." (Doc. No. 9 at 2). In *Raycraft*, the Sixth Circuit affirmed multiple district courts' holdings that detentions without bond hearings under 8 U.S.C. § 1225(b)(2)(A) were unlawful and violated due process. 175 F.4th at 732, 734. The court reasoned that 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention scheme, which does not provide for individualized bond hearings, does not apply to people who are not seeking admission or lawful entry into the United States, because they are already in the United States. *See id.* at 732. The court clarified that, instead, "§ 1226 applies to aliens already present in the United States." *Id.* (internal citation and quotation omitted). The court also concluded that detention without a bond hearing in those circumstances (i.e., where an alien is subject actually to § 1226(a) rather than 8 U.S.C. § 1225(b)(2)(A)) constitutes a deprivation of liberty in violation of the Due Process Clause. *See id.* at 734.

Petitioner was already residing in the United States when she was taken into ICE custody. (Doc. No. 1 at ¶ 3).[3] Accordingly, and consistent with *Raycraft* (not to mention the great majority of district courts, albeit not the great majority of courts of appeals, that have ruled on this issue), the Court finds that Petitioner's detention without a bond hearing is unlawful and constitutes a deprivation of liberty without due process of law, in violation of the Fifth Amendment. Of the (many) courts finding likewise, some have conditionally granted the writ, i.e., have ordered the petitioner's immediate release if, after a specific (small) number of days, the petitioner is not granted a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge. *See, e.g., Magdaleno v. Raycraft*, No. 1:25-CV-1706, 2025 WL 3637413, at *9 (W.D. Mich. Dec. 16, 2025) ("The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment or, in the alternative, immediately release Petitioner from custody."). But others have ordered the petitioner's immediate release. *See Yao v. Almodovar*, 813 F. Supp. 3d 461, 477 (S.D.N.Y. 2025) (collecting cases). The Court here opts for the latter approach, finding—while acknowledging that the issue is debatable—that because Petitioner's rights to a bond hearing under § 1226(a) have been denied, "[a] bond hearing after the fact, by definition, would not and cannot cure that constitutional violation [and that although Petitioner's] release today cannot cure his loss of liberty since [the day he was detained], this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." *Id.*

That leaves just one final issue: the time by which Respondent must—absent some conceivable stay of the instant order—comply with this order's directive to release Petitioner. On

---

[3] Because Respondent conceded that "Petitioner is detained under § 1226(a)," (Doc. No. 9 at 2), the Court considers the allegation that Petitioner was already residing in the United States when she was taken into ICE custody as conceded by Respondent and treats it as true.

this issue, the Court perceives that it has substantial discretion. That discretion is influenced by the facts that (i) this order is being entered in the early afternoon of September 21, 2026; (ii) Petitioner filed her Reply to the Response on Friday, September 18, 2026; and (iii) as explained above, the Court's order otherwise is aggressive in dictating Petitioner's prompt release (as opposed to continued detention pending a bond hearing). But the Court's discretion is also influenced by the mandate of 28 U.S.C. § 2243[4] and Respondent's previously demonstrated capability in effectuating a rapid transfer of Petitioner.[5] Under these circumstances, the Court in its discretion is inclined to, and will, order that Petitioner's release occur by 5:00 p.m. Central Time on Tuesday, September 22, 2026, in Nashville, Tennessee.[6]

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Petition to the extent that it requests the immediate release of Petitioner. Respondent **SHALL** immediately release Petitioner from custody. Petitioner's release **SHALL** occur (i) in no case later than 5:00 p.m. Central Time on Tuesday, September 22, 2026; (ii) in Nashville, Tennessee; and (iii) with all possessions, property, and documents Petitioner had at the time she was taken into custody.

The Court will (separately) enter a judgment granting the writ, subject to the timing parameters of such relief specified above.

---

[4] "The court shall . . . dispose of the matter as law *and justice* require." 28 U.S.C. § 2243 (emphasis added).

[5] "Petitioner was detained on September 15, 2026, in Nashville, Tennessee, and *on the same day* transferred to Mason, Tennessee, to an ICE facility where she remains." (Doc. No. 9 at 1, emphasis added).

[6] As for what happens after Petitioner's release, the Court will not venture to say. But under the circumstances and in consideration of the parties' arguments, Petitioner's immediate release is the correct result at this time.

The Clerk is **DIRECTED**, once such judgment is filed, to enter judgment for purposes of Rule 58 and close the file.[7]

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

[7] Counsel for Petitioner is reminded that to seek costs and attorney's fees under the Equal Access to Justice Act (*see* Doc. No. 1 at 9, ¶ 6; Doc. No. 10 at 6, ¶ 4), Petitioner must file a separate motion to that effect.